No. 15-2065

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

BRIAN BAKER,

        *Plaintiff-Appellant*,

*v.*

CITY OF CHESAPEAKE

        *Defendant-Appellee*.


_____

On Appeal from the United States District Court
for the Eastern District of Virginia – Norfolk Division
Hon. Raymond Alvin Jackson, District Judge
_____


OPENING BRIEF OF PLAINTIFF-APPELLANT
BRIAN BAKER
_____

MARGARET MARY LOOBY
Attorney at Law
638 Independence Parkway, Suite 638
Chesapeake, Virginia 23320
Tel:484-241-6020
Fax: 757-842-4839
margaretmlooby@gmail.com

SHANNON BETH BAYONA
Taylor Bayona Law Group, P.C.
1401 Kempsville Road, Suite A
Chesapeake, Virginia 23320
Tel: 757-312-0050
Fax: 757-312-0063
shannonbayona@gmail.com

# TABLE OF CONTENTS

Table of Authorities…………………………………………………………3

Statement of Jurisdiction……………………………………………………..5

Statement of the Issues………………………………………………………5

Statement of the Case………………………………………………………6

    A.    Course of Proceedings……………………………………………..6

    B.    Statement of Facts…………………………………………… 6

    C.    District Court's Decision…………………………………… 13

Summary of Argument……………………………………………… 14

Argument-------------------------------------------------------------------------15

    I    STANDARD OF REVIEW……………………………………15

    II.    ON THIS RECORD, THE DISTRICT COURT ERRED IN STATING   THAT THE CITY'S CONDUCT TOWARD BAKER COULD NOT, AS A MATTER OF LAW, CONSTITUE ACTIONABLE DISCRIMINATION…………………………16

    III.    GENUINE ISSUES OF FACT REMAIN CONCERNING WHETHER BAKER'S DISCHARGE OCCURRED UNDER CIRCUMSTANCES THAT RAISE A REASONABLE INFERENCE OF UNLAWFUL  DISCRIMINATION. ………………………19

    IV.    THE RECORD EVIDENCE IS SUFFICIENT TO CREATE A TRIABLE ISSUE AS TO WHETHER THE CITY FIRED BAKER IN RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY AFTER HE CALLED HUMAN RESOURCES COMPLAINING OF DISPARATE TREATMENT…………………………………22

V.    BAKER WAS MEETING THE LEGITIMATE EXPECTATIONS OF HIS EMPLOYER WHEN HE WAS TERMINATED AND TRIABLE ISSUES REMAIN AS TO WHETHER HE WAS ACCOMODATED FOR HIS DISABILITY…………………….26

Conclusion……………………………………………………………………..27

Request for Oral Argument……………………………………………………28

Certificate of Service…………………………………………………………..28

## TABLE OF AUTHORITIES

### Cases

*Ballinger v. North Carolina Agricultural Extension Service,* 815 F.2d 1001, 1004 (4th Cir.1987), *cert. denied,* 484 U.S. 897, 108 S. Ct. 232, 98 L. Ed. 2d 191 (1987))……………………………………………………………………19

*Bryant v. Aiken Reg'l Med. Centers Inc.*. 333 F.3d 536, 543 (4th Cir. 2003) ….23

*Cline v. Roadway Express*, Inc., 689 F.2d 481, 485 (4th Cir. 1982)………….17

*Doyle v. Sentry Ins.*, 877 F. Supp. 1002 (E.D. Va. 1995)…………………….16, 19

*E.E.O.C v. Navy Federal Credit Union*, 424 F.3d 397 (205)……………….24

*EEOC and Santana v. Sears Roebuck and Co.*, *et al*, 243 F 3d. 846 (4th Cir. 2001).

*FDIC v. Cashion*, 720 F.3d 169 (4th Cir.2013)……………………………15

*Haulbrook v. Michelin N. Am.*, 252 F.3d 696 (4th Cir. 2001)……………….19

*Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013)……………..16

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)……………………………………………………………………….23

*Runnebaum v. Nations Bank of Maryland, N.A*., 123 F.3d 156, 165 (4th Cir. 1997)………………………………………………………………………….26

*Seabulk Offshore, Ltd. v. Am. Home Assurance Co.,* 377 F.3d 408 (4th Cir. 2004)………………………………………………………………….. 15

*Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir. 2001)). …….23

*University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517 2013 ………………………………………………………………………….26

*Young v. UPS*, 707 F.3d 437, 446 (4th Cir. 2013)……………………………16

## **Statutes**

28 U.S.C. §1291................................................................... 5

28 U.S.C. § 1331...................................................................5

42 U.S.C. §§ 12101 *et seq.* Americans with Disabilities Act ......................5

42 U.S.C. § 12203(a)......................................................................

42 U.S.C. § 2000e-*et seq*……………………………………………………..5

29 C.F.R. §1630(n)……………………………………………………...27

§ 9.1-300, *et seq.,* Code of Virginia, Firefighters' Bill of Rights…………10

## **Rules**

Federal Rules of Appellate Procedure Rule 4(a)(1)(B)......................................... 2

Fed.R.Civ.P. 56(c)……………………………………………………………16

Fed.R.Civ.P. 80……………………………………………………………….28

## **Miscellaneous**

City of Chesapeake Administrative Regulation 2.11 - Disciplinary Policy...25

City of Chesapeake Standard Operating Procedures ("S.O.P.") 1.2.1.6,
effective June 30, 2008 …………………………………………………………10

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this case under the Americans with

Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*., Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e-*et seq*., and 28 U.S.C. § 1331.  On August 11,

2015, the district court granted summary judgment to the City of Chesapeake ("the

City").  Joint Appendix ("JA") at 416. On September 10, 2015, Baker filed a

timely notice of appeal.  JA 427.  This Court now has appellate jurisdiction under

28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      When an employer admits that the stated reasons it fired a qualified

individual with a disability are not the real reasons for the adverse employment

action, did the district court err when it ruled that Baker did not present evidence of

a discriminatory motive animating the adverse employment action and that its

stated reasons are pretextual.

2.      In addition to strong evidence of causation, record evidence creates a

triable issue that Baker was discharged that support a reasonable inference of

unlawful discrimination.

3.     Whether the record evidence is sufficient to create a triable issue as to whether the City fired Baker in retaliation for his engagement in protected activity by complaining of disparate treatment.

## STATEMENT OF THE CASE

**1.     Course of Proceedings**

Plaintiff/Appellant Brian Baker  filed his Complaint on June 27, 2014, for discrimination he suffered while working as a Firefighter/Emergency Medical Technician ("FF/EMT") for Defendant/Appellee City of Chesapeake.  Baker alleged discrimination and failure to accommodate under the Americans with Disabilities Act ("ADA");  violations of "Title VII," and "Retaliation."  Defendant filed a Motion for Summary Judgment along with its supporting memorandum on June 9, 2015, alleging that Baker was unable to make a prima facie case on any of his counts.  The district court granted summary judgment.  JA 416.

**2.     Statement of Facts**

Brian Baker is a young man who was dedicated to being a Fire Fighter despite a lifelong challenge with Attention Deficit Disorder ("ADD"). JA 417. Mr. Baker, who is a truthful individual, has always been completely upfront with Defendant about his disability and struggle to overcome it. JA 201.  Prior to the events which lead to this lawsuit, Mr. Baker spent approximately three years in a profession he loved.

It is clear from the statement of Chief Elliot, who heads the entire Fire Department, that unbeknownst to Mr. Baker, he was considered "dead wood" that the fire department should not have to carry. JA 255. It seems obvious that this attitude permeated all of upper management who dealt with Mr. Baker. Mr. Baker has always worked to perform his job despite his disability.

Lieutenant Daggers, Baker's first supervisor, testified that Baker "came in nervous like most probies do," but he was very positive, had a good attitude and worked hard. JA 172. One of the biggest issues that Lt. Daggers saw with Baker was that he had an issue with time management and being able to perform a task at the level expected. *Id.*

In the course of learning his new job, Baker requested help with tasks involving focus and concentration, such as checking apparatus equipment. JA 57-58. However, at times, Baker had difficulty adjusting his medication with working night shifts (JA at 178; 337-338) and when his blood pressure was high (JA 355). Baker informed his supervisors of these difficulties and asked that they bear with him. (JA 337-338; 355*) Id*.

Nevertheless, Baker felt, that he was "walking on egg" in a "hostile environment" such he was reluctant to ask for assistance in the fear that he would be demeaned. JA 103; 364-367; JA 149. He was subject at times to on-the-job ridicule, verbal abuse and the use of vulgarity when being disciplined (with Lt.

Daggers) and became so upset that he requested a transfer.  JA 149; 179-185; 346-350. Lt. Daggers acknowledged that he was wrong to use vulgarity when disciplining Baker.  JA 183. The two became friends after Baker's transfer. JA 185.

When Baker transferred to Station 9 under Lieutenant Westbury, Baker became embarrassed to ask for help because his experience with Lt. Westbury was that this was a very easy job, anybody could do the job and that Baker just needed to step it up. JA 353.

The problems which have led to his dismissal and this lawsuit arose because the City seized upon an event wherein Mr. Baker acted to defend his wife against an assault and sexual battery against her.  JA 5-10. Mr. Baker was charged in March, 2012 with misdemeanor assault and battery, which charges were dismissed. JA 144-146.  The sexual battery charges Baker's wife filed against her attacker were also dismissed.  *Id*.

Mr. Baker received an evaluation signed in April, 2012, after his arrest, which indicated that although there were areas of improvement needed, he was satisfactory for continued employment. JA 113-122. The major issue involved usage of sick leave that he was legally entitled to use. *Id*. The evaluation noted "inconsistent follow-through" which has been documented since his first assignment in the department.  JA 122.  The document also noted that Baker was

on suspension/light duty which have to do with "personal issues" and that it was Lt. Westbury's observation that those issues were not affecting his job performance as a whole on a daily basis. *Id*.

Mr. Baker was initially suspended after his arrest. JA 6. City of Chesapeake Administrative Regulation 2.11 - Disciplinary Policy B(2)(a). City policy allows fire fighters who are charged with an offense to be placed on light duty pending the outcome of the court case. Plaintiff was granted light duty on April 9, 2012 but when the trial date was continued on April 24, 2012, at the request of Baker's opponent, Baker was immediately re-suspended without pay and without explanation. JA at 14.

Lt Daggers testified that he saw that Baker was very upset about how he was being treated differently from other people in the fire department with regard to his continued suspension. JA 191-192. Lt Daggers had a conversation with Baker about how Baker was being treated unfavorably by the fire department compared to others who were involved in drug possession and stealing cleaning supplies. *Id*. Lt. Daggers testified that he did not blame Baker for venting and being upset about this type of treatment. *Id*.

Baker called Human Resources to ask questions regarding his job status. JA15. He also reported that he had heard of another employee who had not been suspended who allegedly had stolen supplies from Defendant. *Id*. Plaintiff made it

very clear that he had no personal knowledge but was conveying information provided by another source. JA 56-57. Plaintiff explained that he believed that he was being treated unfairly and differently from others who were allowed to work and receive a paycheck. JA 15.

On May 4, 2012 Baker was brought into headquarters for a meeting with Division Chief Ellis without advanced notice of the subject of the meeting. JA 29-66. During the meeting he became the target of an interrogation regarding his conduct. Standard Operating Procedure ("S.O. P.") 1.2.1.6 clearly expresses no such interrogation should occur unless the Fire Fighter receives sufficient notice of the subject matter of the meeting if the interrogation could lead to discipline. It is important to note that there were multiple possible investigations occurring. JA 91-92.

Baker was told that he could not speak to anybody about "the investigation." Baker vehemently denies talking to anyone regarding any investigation after he was told not to. He testified in his deposition that he was upset that when he reported misconduct to HR and spoke with fire supervisors he suddenly became a "liar." JA at 398. He was also upset, he testified, by the fact that the rules and regulations of the fire department state that somebody who reports misconduct in the fire department would not be retaliated against, "and all of a sudden, I become somebody who was giving misleading information." *Id.*

Baker was called into another meeting on May 23, 2012. The aims of this second investigation were allegations that Baker had: 1) engaged in physical violence or fighting; 2) made false and misleading statements during the prior investigation; and 3) failed to maintain the confidentiality of the prior investigation. JA at 91-92.  Plaintiff signed an additional "Notice of Internal Administrative Investigation" at the opening of this second investigation. *Id.*

When Baker was called in to explain the events, he consistently explained that he was defending his wife, although, because of his disability, his narration was not always 100 percent the same. However, the essential fact that he was defending his wife was always the same. JA at 139, Lt. Daggers testified that "I think sometimes Brian has a problem being able to say what he actually means. He will say one thing and then he may say something to somebody else that means the same thing, but it comes out differently if that makes any sense. JA at 185.

Chief Ellis testified at Baker's grievance hearing that you have to be "100 accurate" if you are going to name an officer and say she stole something.  JA231-235.  Chief Ellis acknowledged that Baker did not have first-hand knowledge of the rumor (JA 234) and that the underlying merits to the rumor were never investigated.  *Id.*  The rumor was widespread throughout the fire department.  JA 298-299.

11

During Baker's grievance hearing, counsel for the City asked the following:

Q. Did you have any sense whether Mr. Baker while he worked with you was truthful or not?

Lt. Daggers testified that "I always thought that he was truthful…I don't ever recall him ever lying to me while he worked for me, that I know." JA 201.

Even after the assault charge against him was dismissed by the Chesapeake General District Court, the City continued its course of action to accomplish its overall goal to rid itself of Mr. Baker. Mark Simmons, Fire Department employee of more than 30 years and Union President testified that consistently, other firefighters who had been arrested or who faced charges were returned to their positions once their charges were dismissed. JA 302-303.

In addition, the City has applied that policy in an arbitrary and inconsistent manner, allowing a fellow fire fighter, charged with a felony of attempted malicious wounding and misdemeanor destruction of property, to be reinstated with only a letter of reprimand after pleading guilty. JA at 5-10.The City, hard-pressed to explain how the broad concept of fighting or violence applied in Baker's case, did not include violence associated with the intentional destruction of property, claimed that Powell did not "lie." JA 9.

Baker was terminated from his position as firefighter/EMT on July 10, 2012. JA 98-99. On the day Baker was fired, the City claimed it was terminating him for an "affair" which had allegedly taken place off-duty, two years before his termination, and for which he was never disciplined. *Id.*

The culmination of these investigations and impromptu "meetings" that ended up being interrogations, was to form the basis for additional pretexts for Plaintiff's dismissal—lying and violating a confidentiality agreement, finally, an affair. The truth is that neither misconduct, nor lying, nor any breach of confidentiality agreement , nor an affair was the real impetus for Plaintiff's discharge. As Chief Elliot stated during Plaintiff's Grievance Hearing in October, 2012:

> "You go back through the fire department history we have got scrappers in our department and we have got beer drinkers in our department, and I guarantee you there have been some knuckle busting over the years. It's not about what happened in that parking lot. It's about tracking this guy from the day he hit the station all the way through his little short career….We don't have room for dead wood." JA at 255.

## 3.    The District Court Decision

The district court granted the City's motion for summary judgment primarily on the premise that Baker had not set forth sufficient evidence to create a genuine dispute as to any material fact, and based on the undisputed facts, had not established a prima facie case toward discrimination under the ADA, Title VII or retaliation for engaging in protected activity.

# SUMMARY OF ARGUMENT

The district court erred in refusing to allow this case to go to trial given the many conflicting reasons the City of Chesapeake gave for firing firefighter/EMT Baker, who had a known disability and had engaged in protected activity.

Summary judgment should be denied when material facts are in dispute. The City offered several different reasons for firing Baker. First the City stated that it was imposing discipline against Baker for: involvement in an act of violence or fighting; making false or misleading statements during a previous administrative investigation; and, failure to maintain confidentiality of an Administrative Investigation.

On the day Baker was fired, the City claimed it was terminating him for an "affair" which had allegedly taken place off-duty, two years before his termination, and for which he was never disciplined. Then, at Baker's grievance hearing, the Chief of the Fire Department testified that none of those reasons were the real reason he decided to terminate Baker, but rather that Baker was "dead wood" that the department should not have to carry.

The record reflects that Baker has ADD and is a qualified individual under the Americans with Disabilities Act, who can perform his job with or without accommodation. There is a genuine issue of material fact as to whether Baker was discharged because of his disability.

Contrary to the district court's decision below, this case is not about the "quality of an internal investigation" conducted by the City of Chesapeake, and the Court would not, in this case, be acting as a "super personnel department."

With this many material facts in dispute, the court below gave inappropriate deference to the City's version of events and ignored much of Baker's admissible evidence. Reasonable inferences were not drawn in support of Baker, the nonmoving party below, as they should have been. Summary judgment should have been applied with special care to this employment discrimination case.

## ARGUMENT

## A.    STANDARD OF REVIEW

Review of a district court's decision granting summary judgment is *de novo*, applying the same standard as the district court. *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir.2013). In determining whether to grant a motion for summary judgment, the court views the facts and inferences drawn therefrom in the light most favorable to the non-moving party. *E.E.O.C v. Navy Federal Credit Union*, 424 F.3d 397, 405 citing *Seabulk Offshore, Ltd. v. Am. Home Assurance Co.,* 377 F.3d 408, 418 (4th Cir. 2004).

An award of summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits . . . show that there is no genuine issue of material fact and that the

moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The summary judgment standard must be applied with special care in

considering cases involving questions of motive, such as in employment

discrimination cases. *Doyle v. Sentry Ins*., 877 F. Supp. 1002,

1005 (E.D. Va. 1995).

## II. ON THIS RECORD, THE DISTRICT COURT ERRED IN STATING THAT THE CITY'S CONDUCT TOWARD BAKER COULD NOT, AS A MATTER OF LAW, CONSTITUE ACTIONABLE DISCRIMINATION.

The Americans with Disabilities Act makes it an unlawful employment

practice for an employer, such as the City of Chesapeake, to discriminate against

an individual because of his disability. 42 U.S.C. § 12112(a).

Contrary to the district court's conclusion that Baker produced no proof that

points toward illegal discrimination, summary judgment was inappropriate in this

case because the record reflects <u>direct evidence</u> that the City discriminated against

Baker because of his disability.

Direct evidence of discrimination "encompasses 'conduct or statements that

both (1) reflect directly the alleged discriminatory attitude,' and (2) 'bear directly

on the contested employment decision.'" *Laing v. Fed. Express Corp*., 703 F.3d

713, 717 (4th Cir. 2013). "Thus, evidence is direct if it establishes discriminatory

motive with no need for an inference or presumption." *Young v. UPS*, 707 F.3d

437, 446 (4th Cir. 2013); see also, *Cline v. Roadway Express*, Inc., 689 F.2d 481,

485 (4th Cir. 1982) (explaining that evidence of discrimination "may consist of

…evidence that the employer announced or admitted, or otherwise unmistakably

indicated that [an impermissible consideration] was a determining factor").

Here, the Chief Elliot, head of the Chesapeake Fire Department, admitted

that the stated reasons for Baker's discharge from his position as fire fighter were

not the real reasons for his termination. JA at 256. Rather, as Chief Elliot stated,

under oath, during Baker's grievance hearing in October, 2012:

> "It's not about the scrap they had in the parking lot that night….You
> go back through the fire department history we have got scrappers in
> our department and we have got beer drinkers in our department, and I
> guarantee you there have been some knuckle busting over the years.
> It's not about what happened in that parking lot. It's about tracking
> this guy from the day he hit the station all the way through his little
> short career….We don't have room for dead wood." JA at 256.

It is clear that the "dead wood" comment relates to difficulties Baker had,

which were a direct and proximate consequence of his attention disorder.

The testimony elicited during Baker's grievance hearing from Baker's

supervisor at Station 2, Lieutenant Duane Daggers, was that Baker was very

positive, had a good attitude and worked hard. JA at 172. Lt. Daggers continued

his testimony stating that "[o]ne of the biggest issues we saw was that Brian had an

issue with time management and being able to perform a task consistently at the

level of what we expected him." *Id*. Lt. Daggers was aware that Baker had ADD

and attributed that condition as a reason why Baker might have had trouble with time management and consistency.  JA at 178.

Lieutenant Westbury, Baker's supervisor at Station 9, was also aware of Baker's ADD and stated that there were performance issues relating to Baker with "focusing," "attention to detail" and "follow through with instructions."  JA at 156.

Given the issues in the record with regard to Baker's performance being attributable to ADD, a reasonable jury could construe Chief Elliot's "dead wood" comment to be evidence of discriminatory attitude.  A reasonable jury could further construe the following testimony by Chief Elliot to be evidence of a discriminatory attitude toward a disabled person:

> [B]ut I want to tell you this is, that when you have an employee that you have to put a card on a notebook to tell him what time to check the equipment and what time to check this next piece of equipment, that's not the type of employee I'm real comfortable with sticking a needle in somebody's veins.   JA at 269-270.

When the asserted reason for Baker's termination (acts of violence and fighting) is *admitted* to not be the *true* reason for termination ("we got plenty of scrappers" and "knuckle busting"), the district court erred in concluding that Baker failed to create a genuine issue of material fact as to discrimination.

The district court made the false presumption that because the City conducted an internal investigation, that its results were accurate, without any consideration of the discriminatory motivations.  The summary judgment standard

must be applied with special care in considering cases involving questions of motive, such as in employment discrimination cases. *Doyle*, 877 F. Supp. 1002,1005 (E.D. Va. 1995) (citing *Ballinger v. North Carolina Agricultural Extension Service*, 815 F.2d 1001, 1004 (4th Cir.1987), *cert. denied*, 484 U.S. 897, 108 S. Ct. 232, 98 L. Ed. 2d 191 (1987)).

## III. GENUINE ISSUES OF FACT REMAIN CONCERNING WHETHER BAKER'S DISCHARGE OCCURRED UNDER CIRCUMSTANCES THAT RAISE A REASONABLE INFERENCE OF UNLAWFUL DISCRIMINATION.

The United States Court of Appeals for the Fourth Circuit has described the fourth element of a prima facie case of discrimination under the ADA as requiring the employee to show that "his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001). On this fourth element of a prima facie case for discrimination, the district court ruled that Baker had failed to offer sufficient evidence to support a reasonable inference of unlawful discrimination." JA at 423.

Throughout the record in this case, there is evidence that Baker was being treated differently from other fire fighters in similar circumstances, none of whom were known to have a disability.

From the time he was charged with the misdemeanor assault, Baker consistently denied initiating any fight or violence and ultimately his charge was dismissed in Chesapeake General District Court. JA at 144-146. Baker was

repeatedly accused of lying with regard to the details of the alleged assault charge where he consistently stated that he was defending his wife from assault and sexual battery. JA at 5-10; 23-28.  This, despite the record reflecting that those who had worked with Baker, described him as a truthful individual.  JA at 201. During Baker's grievance hearing, Counsel for the City questioned Lt. Daggers, one of Baker's former supervisors as to whether he had any sense of whether Mr. Baker was truthful or not.  *Id*.  "I always thought he was truthful" was the response.  *Id*. Lt. Daggers testified that "I think sometimes Brian has a problem being able to say what he actually means.  He will say one thing and then he may say something to somebody else that means the same thing, but it comes out differently if that makes any sense."  JA at 185.  Nevertheless, one of the multi-varied reasons for Baker's termination was that he made "false and misleading statements" during an investigation. JA at 98-99.

With regard to termination decisions, Baker had a direct comparator, former African-American Firefighter/Paramedic James Powell, not known to be disabled who was charged with a felony attempted malicious wounding against a citizen and misdemeanor intentional property damage.  JA at 9. The Commonwealth nolle prossed the felony attempted malicious wounding charge and Mr. Powell pled guilty to misdemeanor property damage. *Id*.  He received a suspended sentence and was required to attend court-ordered anger management training. *Id*.Unlike

Plaintiff's situation where the criminal charges were wholly dismissed, there was no judicial determination on that Powell did not commit the offense of malicious wounding or that the offense did not involve a citizen. Nevertheless, unlike Baker, he was reinstated and his sole discipline was a written reprimand. *Id*.

With regard to suspension, Baker was not allowed to continue on light duty status, "pending the outcome of court proceedings." JA at 14-20. This was directly opposed to the City's practice with other similarly situated employees who did not suffer from a known disability. Baker Deposition Transcript, JA at 401-404.   Plaintiff had no history of work-place violence. JA at 101.

Union President Mark Simmons testified that it appeared to him that Baker was being treated differently, including that the City was not chasing leads with regard to the officer allegedly stealing supplies but Baker is getting disciplined.  JA at 298-299; 300-306.  The record also reflects, in the sworn testimony of  Mark Simmons that plenty of people in the fire department have had affairs and that he had never of anyone being disciplined or terminated for such.  JA at 302-304. Nevertheless, this "illicit affair" was the first reason given for the City's decision to terminate Baker.  JA at 98.

With the multiple explanations for its termination decision, including having an affair, making false and misleading statements, lying during an investigation (of which there were multiple investigations, JA at 29; 92-96),

committing acts of violence and physical fighting, JA 98-99, a jury might reasonably determine that the stated reasons offered by the City to explain the discharge were pretextual. An employer's changing rationale and offering different justifications at different times for its' adverse employment decisions, including the late appearance of the affair rationale, can be evidence of pretext. See, *EEOC and Santana v. Sears Roebuck and Co*., *et al*, 243 F 3d. 846 (4th Cir. 2001).

## IV.  THE RECORD EVIDENCE IS SUFFICIENT TO CREATE A TRIABLE ISSUE AS TO WHETHER THE CITY FIRED BAKER IN RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY AFTER HE CALLED HUMAN RESOURCES COMPLAINING OF DISPARATE TREATMENT.

On April 26, 2012, Baker complained to his Human Resources Department regarding his pay and benefits. JA 15. Baker, at that time, was suspended based on an allegation of assault. JA 14. Initially, he was suspended but allowed to return to light duty. JA 13. After the case was continued, his status was changed to suspended without pay. JA 14. Baker called Human Resources at that time because he felt he was being treated differently and unfairly. JA 15. He also expressed a rumor that he had heard elsewhere, as to misconduct by a fire department lieutenant. *Id*.

Before Baker contacted the City's HR department on April 26, 2012, the City seemed to have a "wait and see" approach regarding the pending court case.

22

Within days of the call to HR, investigations started.  JA 7-8. The focus of the investigation, for which Baker was not given legally required, written advanced notice, quickly turned to allegations that: Baker lied; that Baker breached confidentiality;  that Baker had an affair; and that Baker committed "violence against a citizen," a nonexistent offense, and that the City was now concerned about "workplace violence" vis a vis Baker.  JA at 5-6,19, 23-28,29-99.

Retaliation claims under the ADA and Title VII are evaluated under the *McDonnell Douglas* burden shifting framework first formulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), under which a plaintiff bears the initial burden of establishing a prima facie case of retaliation.

To establish a prima facie case of retaliation, a Plaintiff must show "that (1) he engaged in protected activity, (2) he suffered an adverse employment action at the hands of his employer; and (3) the employer took the adverse action because of the protected activity." *Bryant v. Aiken Reg'l Med. Centers Inc.*. 333 F.3d 536, 543 (4th Cir. 2003) (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir. 2001)).

The district court found that Baker repeatedly raised concerns of disparate treatment between himself and other employees, including a female employee and another employee of a different race, whom he claimed had received lighter

punishments under similar circumstances.  JA at 418.  However, the district court held that even assuming that Baker's contact with the City's Human Resources Department was protected activity, he could not show that he suffered any adverse employment action as a result.  JA at 426.

In its ruling, the district court reasoned that the reprimand issued to him by the City on May 2, 2012, reminding Baker of the individual designated as his point of contact throughout his suspension period and warning him that "[a]ny breach of this [chain of command] procedure will result in disciplinary action," was merely a routine "administrative policy" that does not amount to an adverse employment actions sufficient to support a claim for retaliation.  JA 426.

The district court's analysis on this point took "too narrow a view" of the City's actions relating to Baker.  See, *EEOC v Navy Federal Credit Union*, 424 F.3d 397, 407.  The series of events reflected in the record after Baker's call to HR show that the fire department chiefs set in motion a plan to terminate Baker in retaliation for his complaints of disparate treatment while at the same time seeking to conceal their improper motives under the guise of objective criteria.  *Id.*

The record reflects that the City had known, since 2010, of Baker's self-reported involvement with a female member of a household to which Baker had made an EMT call months before their meeting again.  JA at 362.  Baker was terminated for this "relationship" took place sometime in 2010, off-duty, which

Baker self-reported, and for which he was never disciplined.  JA at 357-363.  The absence of any write-ups or discipline may lead a reasonable juror to infer that the "affair," which led to Baker's dismissal was a pretext and that retaliation for engaging in protected activity motivated the City's termination of Baker. As for "workplace violence," that regulation does not apply to Baker under any scenario. See City of Chesapeake Administrative Regulation 2.46, Workplace Violence Prevention Policy.  See also JA 101; 301 (Baker not known for workplace violence).

What is the most obvious connection between Baker's call to HR and his termination, an adverse employment action, is revealed in the unreasonable and unrelenting testimony of Division Chief Ellis at Baker's grievance hearing.  JA 211-247.  Ellis states Baker was put under investigation for going outside of his [Ellis's] "chain of command," by calling HR; and that Baker had to be no less than 100% correct when reporting misconduct to HR.  *Id*. at 232.  The record is clear that Baker was not trying to get his fellow-employees in trouble, but that he wanted to be treated similarly to other employees in like circumstances.  JA 15, 149, 164-165.  Baker need only reasonably believe that he was being treated differently from similarly situated employees who did not have a disability or who were not engaged in protected activity.  But for, Baker's call to HR, Baker would not have been terminated for making false and misleading statements.

There exists temporal proximity as to the above sequence of events, raising a triable issue of retaliation for engaging in protected activity.  The City deviated from its usual practices and policies when it dealt with Baker.  But for Baker's complaint to HR, a reasonable inference is that none of the ensuing actions would have occurred. See, *University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517 (2013).

## V.     BAKER WAS MEETING THE LEGITIMATE EXPECTATIONS OF HIS EMPLOYER WHEN HE WAS TERMINATED AND TRIABLE ISSUES REMAIN AS TO WHETHER HE WAS ACCOMODATED FOR HIS DISABILITY.

The City assumed for purposes of summary judgment, that Baker is an individual with a disability under Americans with Disabilities Act ("ADA"), as defined in 42 U.S.C. § 12102, and that Plaintiff was discharged. The City argued below that Baker was not meeting the legitimate expectations of the City at the time of his termination, and therefore cannot satisfy the third prong of a prima facie case under the ADA. *Runnebaum v. Nations Bank of Maryland, N.A*., 123 F.3d 156, 165 (4th Cir. 1997).   The City offered in support of its argument, Baker's evaluation of April, 2012.  JA  113-122.

Here to, there are genuine issues of material fact.  Although there were areas of improvement needed, Baker was satisfactory for continued employment. *Id*. The major issue involved usage of sick leave that he was legally entitled to use. *Id*. As for Baker's conduct, the document showed that the circumstances for which Baker

26

was Baker was on suspension/light duty [his arrest] had to do with "personal issues" and that it was Lt. Westbury's observation that those issues were not affecting his job performance as a whole on a daily basis. *Id.* Moreover, there is a difference between "conduct" and Mr. Baker's performance of the "essential functions of his job." 29 C.F.R. § 1630(n) (essential functions do not include marginal functions of the position, those activities that do not bear a direct relationship to the purpose for which the job exists.). City Policies that govern the conduct of City-wide employees, although important, do not go to the essential functions of Baker's former position as firefighter.

With regard to "accommodation" for his disability, the record reflects that there was inconsistent and possibly ineffective accommodations with regard to Baker's disability in that he was demeaned, made to feel like a problem employee, and disciplined through the use of vulgarity. JA 103. There is also no evidence that his supervisors engaged in an interactive process with Baker with regard to his schedule and optimal performance with regard to his ADD medication in relation to night-shifts.

## CONCLUSION

Baker had offered ample evidence to support his claims for discrimination and retaliation, much of his evidence coming from sworn testimony that would be

admissible under Fed.R.Civ.P. 80. Baker respectfully requests that the entry of summary judgment be reversed, and the case be remanded for trial.

Dated: November 17, 2015    /s/ Margaret Mary Looby
Margaret Mary Looby (Va. Bar No. 79492)
ATTORNEY AT LAW
638 Independence Pkwy, Suite 240
Chesapeake, VA 23320
Tel: (484) 241-6020
Fax: (757) 842-4839
Email: margaretmlooby@gmail.com

Shannon Beth Bayona (Va. Bar No. 39151)
Taylor Bayona Law Group, P.C.
1401 Kempsville Road, Suite A
Chesapeake, VA 23320
Tel: (757) 512-5395
Fax: (757) 312-0063
Email: shannonbayona@gmail.com

*Counsel for Appellant Brian Baker*

## ORAL ARGUMENT

Baker requests oral argument if it would aid the Court.

Dated this the 16th day of November 2015.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume requirements set forth in Federal Rules of Appellate Procedure 29(d) and 32(a)(7)(B), and Fourth Circuit Rule 32(b)(1). This brief contains 6,167 words, from the Statement of Jurisdiction through the Conclusion, as determined by the

Microsoft Word 2007 word processing program, with 14-point Times New Roman proportionally spaced type.

/s/Margaret M. Looby
Margaret M. Looby (Va. Bar No.: 79492)
638 Independence Parkway, Suite 240
Chesapeake, VA  23320
Tel: 484-241-6020
Fax:  757-842-6020
margaretmlooby@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2015, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the Court's CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/Margaret M. Looby
Margaret M. Looby (Va. Bar No.: 79492)
638 Independence Parkway, Suite 240
Chesapeake, VA  23320
Tel: 484-241-6020
Fax:  757-842-6020
margaretmlooby@gmail.com