RECORD NO. 15-2065

In The

# United States Court of Appeals
### For The Fourth Circuit

## BRIAN BAKER,

*Plaintiff – Appellant*,

**v.**

## CITY OF CHESAPEAKE,

*Defendant – Appellee*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT NORFOLK**

———————

## BRIEF OF APPELLEE

———————

Ryan C. Samuel
Dana E. Sanford
OFFICE OF THE CITY ATTORNEY
CITY OF CHESAPEAKE
306 Cedar Road
Chesapeake, Virginia 23322
(757) 382-6586

*Counsel for Appellee*

<u>**DISCLOSURE OF CORPORATE AFFILIATIONS**</u>
<u>**AND OTHER INTERESTS**</u>

No. 15-2065 Caption: Brian Baker v. City of Chesapeake

Pursuant to FRAP 26.1 and Local Rule 26.1, City of Chesapeake ("City") who is Appellee
makes the following disclosure:

1. Is party/amicus a publicly held corporation or other publicly held entity?
☐ YES  ☒   NO

2. Does party/amicus have any parent corporations?  ☐ YES ☒ NO

If yes, identify all parent corporations, including all generations of parent corporations: n/a

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☒ NO

If yes, identify all such owners: n/a

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?
☐ YES ☒ NO

If yes, identify entity and nature of interest: n/a

5. Is party a trade association? (amici curiae do not complete this question)
☐ YES ☒ NO

If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member: n/a

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☒ NO

If yes, identify any trustee and the members of any creditors' committee: n/a

Date: 12/21/2015                    By: /s/ Ryan C. Samuel
                                    Ryan C. Samuel
                                    Counsel for City of Chesapeake

# TABLE OF CONTENTS

**Page**

DISCLOSURE OF CORPORATE AFFILIATIONS
AND OTHER INTERESTS .......................................................................i

TABLE OF CONTENTS...................................................................... ii

TABLE OF AUTHORITIES ................................................................v

STATEMENT OF ISSUES ..................................................................1

STATEMENT OF CASE .....................................................................1

    1.    Procedural History...............................................................1

    2.    Facts.....................................................................................1

    3.    District Court Decision........................................................5

SUMMARY OF ARGUMENT ............................................................5

ARGUMENT .......................................................................................6

    I.    STANDARD OF REVIEW FOR SUMMARY JUDGMENT ............6

    II.    THE CITY TERMINATED PLAINTIFF BECAUSE OF HIS
    MISCONDUCT AND DID NOT VIOLATE THE ADA ...................8

        a.    Plaintiff was not meeting the legitimate expectations of
        the City when he was terminated from employment.................8

        b.    Plaintiff was not discharged under circumstances that
        would raise any inference of unlawful discrimination ..............9

    III.    THE PLAINTIFF CANNOT ESTABLISH A RETALIATION
    CLAIM .............................................................................14

IV.    THE CITY DID NOT DISCRIMINATE AGAINST THE
       PLAINTIFF BECAUSE HE IS CAUCASIAN ...................................15

CONCLUSION .......................................................................................................16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)...................................................................6

Ballinger v. North Carolina Agricultural Extension Service,
    815 F.2d 1001 (4th Cir. 1987) ...............................................7

Bryant v. Aiken Reg'l Med. Ctrs., Inc.,
    333 F.3d 536 (4th Cir. 2003) ................................................14

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)...................................................................6

DeJarnette v. Corning, Inc.,
    133 F.3d 293 (4th Cir. 1998) ................................................12

Doyle v. Sentry Ins.,
    877 F. Supp. 1002 (E.D. Va. 1995) .......................................7

Edwards v. City of Goldsboro,
    178 F.3d 231 (4th Cir. 1999) ................................................15

EEOC v. Sears Roebuck & Co.,
    243 F.3d 846 (4th Cir. 2001) ...........................................13, 14

Felty v. Graves-Humphreys Co.,
    818 F.2d 1126 (4th Cir. 1987) ...............................................6

Jenks v. City of Greensboro,
    495 F. Supp. 2d 524 (M.D.N.C. 2007) ................................16

Mitchell v. Data General Corp.,
    12 F.3d 1310 (4th Cir. 1993) .............................................6, 7

Moore v. City of Charlotte,
    754 F.2d 1100 (4th Cir. 1985) .......................................................16

Ross v. Communications Satellite Corp.,
    759 F.2d 355 (4th Cir. 1985) ....................................................6, 7

Runnebaum v. Nations Bank of Maryland, N.A.,
    123 F.3d 156 (4th Cir. 1997) ...................................................6, 8

Spriggs v. Diamond Auto Glass,
    242 F.3d 179 (4th Cir. 2001) ................................................. 14-15

**STATUTE**

42 U.S.C. § 12102 .............................................................................8

**RULE**

Fed. R. Civ. P. 56(c) .........................................................................6

## STATEMENT OF ISSUES

1)      Whether the District Court erred in granting the City's motion for summary judgment as to the Plaintiff's Americans with Disabilities Act ("ADA") claim when it determined the Plaintiff failed to produce evidence to support a reasonable inference of unlawful discrimination.

2)      Whether the District Court erred in granting the City's motion for summary judgment as to the Plaintiff's Title VII claim when it determined that the Plaintiff failed to show different treatment from similarly situated employees outside his protected class.

3)      Whether the District court erred in granting the City's motion for summary judgment as to the Plaintiff's retaliation claim under the ADA and Title VII when it determined that the Plaintiff cannot show he suffered any adverse employment action.

## STATEMENT OF CASE

**1.    Procedural History**

The City agrees with the Plaintiff's summary of the procedural history.

**2.    Facts**

Plaintiff was diagnosed with Attention Deficit Disorder ("ADD") as a child, and the diagnosis changed to Attention Deficit Hyperactivity Disorder ("ADHD") while in "middle school or early high school." JA at 314. In 2005, Plaintiff

graduated from high school and earned his "EMT basic certification" from Tidewater Community College. JA at 317. Plaintiff had a private tutor to assist him due to his ADHD while in high school and at Tidewater Community College.

The City hired Plaintiff as a "Firefighter Trainee" on March 2, 2009. JA at 5. Part of the City's hiring process required the Plaintiff to pass an exam. JA at 323. Plaintiff did not request any accommodation for his ADHD in taking the exam and Plaintiff passed the exam. JA at 323. After being hired as a Firefighter Trainee, Plaintiff entered the Chesapeake Fire Academy. JA at 325. Plaintiff continued to utilize a private tutor while at the Chesapeake Fire Academy. JA at 326. Plaintiff received additional study classes, study guides, and test reviews from City personnel while at the Chesapeake Fire Academy. JA at 326-31. The City never denied any of the Plaintiff's requests for assistance. JA at 331.

In September 2009, the City reclassified Plaintiff to a Firefighter/EMT. JA at 5. Plaintiff's essential job duties included "making inspections of apparatus and equipment and notifying his supervisor of defects," "record keeping and supplies maintenance," and working "with the general public and mak[ing] judgments and decisions to guide others." JA at 129. The City first placed Plaintiff at Station 2 under Lieutenant Duane Daggers. JA at 333-34. Lieutenant Daggers knew Plaintiff had ADHD and Lieutenant Daggers provided Plaintiff with reasonable accommodations for his ADHD, such as a checklist. JA at 338-40.

2

In December of 2009, the City transferred Plaintiff to Station 9 under Lieutenant William Westberry at Plaintiff's request because he was unhappy working under Lieutenant Daggers. JA at 344. Plaintiff continued to use the checklist that Lieutenant Daggers offered him, but did not have Lieutenant Westberry check after him because "[i]t seemed a little embarrassing." JA at 352. The City never denied a request for accommodation made by the Plaintiff at either Station 2 or Station 9. JA at 354. In 2010, Plaintiff had an affair with a citizen who lived with a patient with special needs. JA 357-363. The Plaintiff informed Lieutenant Westberry of the affair after it happened because the special needs patient made regular calls for assistance. JA 361-362. Plaintiff was unable to perform his job duties at the residence. Id.

Plaintiff scored a 2.62 out of 5 on his City Performance Evaluation/Counseling Form for April 2011 to March 2012, which is categorized as "Improvement Required." JA at 391-92, 113-19. In March of 2012, the Chesapeake Police Department arrested plaintiff on charges of assault and use of obscene language. JA at 5. In response, the City suspended Plaintiff and put him on light duty at the request of the Plaintiff. Id. The City ended Plaintiff's light duty when the court hearing regarding the charges was continued and Fire Chief Elliot was informed that the Plaintiff "had voluntarily made disturbing and inconsistent statements to fire officers of the events that led to his arrest." JA at 6. Plaintiff then

3

complained of disparate treatment. JA at 7. In response, the City's Fire Department opened an internal investigation into the allegations of disparate treatment. Id. The City's Fire Department also opened an internal investigation into the Plaintiff's allegations that Lieutenant Daggers had been abusive to Plaintiff. JA at 24.

On May 4, 2012, Plaintiff signed a "Notice of Internal Administrative Investigation" that advised Plaintiff to keep any discussion of the internal investigations confidential. JA at 24, 29. The investigations concluded that the allegations of disparate treatment were unsubstantiated. JA at 8. On May 23, 2015, the City opened an administrative investigation into the Plaintiff's potential Fire Department policy violations. JA at 27. Specifically, the investigation focused on the Plaintiff's alleged acts of violence, the Plaintiff making "false and misleading statements during an Administrative Investigation," and the Plaintiff failing "to maintain confidentiality of an Administrative Investigation." JA at 92. Plaintiff again signed a "Notice of Internal Administrative Investigation" that advised Plaintiff to keep any discussion of the internal investigation confidential. JA at 91.

On June 8, 2012, the administrative investigation into Plaintiff concluded that Plaintiff had committed acts of violence against a citizen, made false and misleading statements during an administrative investigation, and that Plaintiff violated the confidentiality of an internal investigation. JA at 93-96. The City issued to Plaintiff a detailed "Notice of Intent to Impose Disciplinary Action." Id.

On June 11, 2012, the Plaintiff responded to the notice of intent and on July 10, 2012, the City terminated Plaintiff for the specific reasons cited, which were summarized therein as a breach of "the trust and confidence the City must have in its Public Safety officials." JA at 97-99. The City also informed the Plaintiff he could grieve his termination. JA at 99. Plaintiff filed a grievance and at the conclusion of a multi-day grievance panel hearing, the grievance panel supported the Plaintiff's termination. JA at 21-22.

**3.    District Court Decision**

The City agrees with Plaintiff's summary of the District Court decision.

## SUMMARY OF ARGUMENT

The Court should affirm the District Court's grant of summary judgment to the City because the City terminated Plaintiff for committing acts of violence against a citizen, making false and misleading statements during an administrative investigation, and violating the confidentiality of an internal investigation. There are no material facts in dispute. Plaintiff has produced no evidence to raise a reasonable inference of unlawful discrimination. Further, the City did not retaliate against Plaintiff for speaking with Human Resources because it took no adverse employment action against him for doing so.

## ARGUMENT

## I.    STANDARD OF REVIEW FOR SUMMARY JUDGMENT.

A review of a district court's grant of summary judgment is reviewed *de novo*. Runnebaum v. Nations Bank of Maryland, N.A., 123 F.3d 156, 163 (4th Cir. 1997). Summary judgment shall be granted when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).

The City can satisfy its burden of showing absence of genuine issue of material fact by pointing out the lack of evidence to support the Plaintiff's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993). "Unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987); Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th

Cir. 1985). The Plaintiff cannot "[rest] upon the bald assertions of his pleadings." Id. at 364.

Plaintiff states that "[t]he summary judgment standard must be applied with special care in considering cases involving questions of motive, such as in employment discrimination cases." Plaintiff's Corrected Opening Brief at 16. While this statement is correct, Plaintiff neglected to include that the Fourth Circuit has noted that "the fact that motive is often the critical issue in employment discrimination cases does not mean that summary judgment is never an appropriate vehicle for resolution." Ballinger v. North Carolina Agricultural Extension Service, 815 F.2d 1001, 1005 (4th Cir. 1987) (citations omitted). "This is so because '…the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. "Where a plaintiff fails to set forth either a prima facie case of discrimination or a "genuine factual dispute over the employer's legitimate non-discriminatory explanation," a defendant may prevail on summary judgment." Doyle v. Sentry Ins., 877 F. Supp. 1002, 1006 (E.D. Va. 1995) (citing Mitchell v. Data General Corp., 12 F.3d 1310, 1316-17 (4th Cir. 1994)).

## II.    THE CITY TERMINATED PLAINTIFF BECAUSE OF HIS MISCONDUCT AND DID NOT VIOLATE THE ADA.

To establish a prima facie case of discriminatory discharge under the ADA, Plaintiff must prove that 1) he was a member of a protected class; 2) he was discharged; 3) at the time of the discharge, he was performing his job at a level that met his employer's legitimate expectation; and 4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. Runnebaum v. Nations Bank of Maryland, N.A., 123 F.3d 156, 165 (4th Cir. 1997). Plaintiff cannot satisfy the third or fourth prongs of his burden and his ADA claims fail as a matter of law.

### a.    Plaintiff was not meeting the legitimate expectations of the City when he was terminated from employment.

Assuming for purposes of summary judgment only that Plaintiff is an individual with a disability as defined in 42 U.S.C. § 12102, he is unable to meet his burden of proof that he was meeting the legitimate expectations of the City at the time of his termination. Prior to the administrative investigation that led to Plaintiff's termination, Plaintiff's last performance evaluation dated April 23, 2012, stated that Plaintiff was not meeting expectations and the City required that his performance improve. JA at 391-92, 113-19. Following the Plaintiff's last performance evaluation, the City's administrative investigation concluded that the Plaintiff committed violence against a citizen, made false or misleading statements

8

in an investigation, and breached the confidentiality of the investigation, all in violation of established policy. JA at 93-99. No reasonable jury could conclude that the Plaintiff was meeting the reasonable expectations of the City. Further, the Plaintiff has not addressed or pointed to any evidence in his corrected opening brief that he was meeting the reasonable expectations of the City. Accordingly, the District Court should be affirmed and summary judgment should be granted for the City.

**b.    Plaintiff was not discharged under circumstances that would raise any inference of unlawful discrimination.**

Plaintiff cannot show any evidence of unlawful discrimination. The City's legitimate reasons for Plaintiff's discharge were stated in detail. JA at 93-99. To combat this fact, in his Corrected Opening Brief, Plaintiff points to an out of context statement made over three months after his termination by Fire Chief Elliot at Plaintiff's grievance panel hearing. Plaintiff states that this statement is direct "evidence" that the City had a discriminatory motive in terminating Plaintiff. Plaintiff's Corrected Opening Brief at 17. Plaintiff ignores that prior to the statement quoted that Chief Elliot recited all the issues the City had had with Plaintiff's veracity, run-ins with the law, failure to follow instructions, and poor judgment. JA at 252-255. Chief Elliott then testified:

> And had those decisions been made then he would have had a job and
> we wouldn't even be in this room today, but you can just – you track
> his two-and-a-half career, you track every incident that we have been

9

involved with, every investigation, all the paperwork that we have had
to do taking him off-line, reassigning him, you know, the City has
spent thousands of dollars on his incompetence since we have had him
here. You add up the time-and-a half overtime that we have had to
pay his backfill while he's been out on suspension, we have spent
thousands, tens of thousands of dollars.

       Our department like your departments have been cut in these
budget cuts. We don't have the same number of people. We don't
have room for dead wood. Everybody has got to pull their weight.
We don't have room to drag somebody with this level of performance
through our department, and I'm certain as fire chief not going to
present him out to the public this is what represents Chesapeake Fire
Department.

JA at 255-56.

There is simply no basis to infer a discriminatory motive from the out of

context statement quoted by the Plaintiff. Rather, when read in context, Chief

Elliot's statement shows evidence that there was no discriminatory motive, but

instead a motive to terminate Plaintiff because he was not meeting the legitimate

expectations of the City.

Plaintiff also argues that there is evidence of a reasonable inference of

unlawful discrimination because he was treated differently than other similarly

situated firefighters. Plaintiff points only to former African-American

Firefighter/Paramedic James Powell as a person substantially similar outside of his

protected class who the City punished less severely than the Plaintiff. Plaintiff's

Corrected Opening Brief at 20-21. Nevertheless, Mr. Powell's situation is not

substantially similar to the Plaintiff's case. Mr. Powell, was charged with felony

attempted malicious wounding and misdemeanor intentional property damage, on or about November 3, 2010. JA at 9. Once the City was notified, the City suspended Mr. Powell pending the outcome of a court proceeding on November 10, 2010. Id. Mr. Powell did not request and did not receive light duty while he was suspended. Id. The Commonwealth *nolle prossed* the felony attempted malicious wounding charge and Mr. Powell pled guilty to misdemeanor property damage. Id. He received a suspended sentence and was required to attend court-ordered anger management training. Id.

The City reinstated Mr. Powell to duty on December 10, 2010. He received a written reprimand. Id. Unlike Plaintiff, Mr. Powell was honest with his superiors about the circumstances that led to his charges; made no inconsistent or misleading statements; did not describe committing any violent acts against a person; and did not breach the confidentiality of an investigation. Id. There are no substantial similarities between Mr. Powell's situation and the Plaintiff's case. Plaintiff was even afforded light duty, a benefit not offered to Mr. Powell, which directly contradicts Plaintiff's unsupported allegation that "other similarly situated employees who did not suffer from a known disability" were afforded light duty status. Plaintiff's Corrected Opening Brief at 21.

Next, as evidence of an inference of unlawful discrimination, Plaintiff argues that the City offered different rationales for terminating Plaintiff. Id. at 22.

The record reflects extensively detailed documentation of the complete rationale for terminating Plaintiff. Plaintiff points to no document or statement from City management that contradicts or offers a differing rationale than the detailed findings made at the conclusion of the administrative investigation. JA at 93-96. Rather, Plaintiff argues statements made by Lieutenant Daggers at the post-termination grievance hearing show that in Lieutenant Dagger's opinion Plaintiff was truthful. Plaintiff's Corrected Opening Brief at 20. Lieutenant Daggers was only interviewed in the administrative investigation of Plaintiff and so could not know whether Plaintiff was truthful with management during the course of the investigation. Finally, Plaintiff points to Mark Simmons, who is not part of management, testifying at the grievance hearing that in his opinion, Plaintiff was being treated differently because "plenty of people in the fire department have had affairs." Plaintiff's Corrected Brief at 21.

Lieutenant Daggers and Mark Simmons's opinions are not relevant to the outcome of this case because it is the perception of the City decision makers that matters in determining whether there was any discriminatory intent. DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998). Mark Simmons's opinion is particularly irrelevant because Plaintiff was not terminated because he had an affair, but rather the reasons stated in conclusions of the administrative investigation— committing acts of violence against a citizen, making false and

12

misleading statements during an administrative investigation, and violating the confidentiality of an internal investigation. JA at 93-96. The affair is mentioned only as the beginning of a series of events leading to the Plaintiff's assault on his wife's paramour. JA at 93. The affair, by Plaintiff's own testimony, also affected Plaintiff's ability to work with his crew and provide services to a disabled citizen. JA 95; 361-62. Further, as the District Court correctly noted, Courts do "not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." Id. Courts look to whether there is evidence of discrimination, and Plaintiff has produced no evidence that raises a reasonable inference of discrimination.

Plaintiff also argues that the City has changed its rationale and offered different justifications for terminating Plaintiff. Plaintiff's Corrected Opening Brief at 22. Plaintiff cites EEOC v. Sears Roebuck & Co., 243 F.3d 846 (4th Cir. N.C. 2001), as justification for this argument. There, the employer, "over time, proffered several reasons for its failure to hire [a prospective employee], including the selection of someone else, a lack of available hours in the loss prevention department, and the belief that [the prospective employee] had been investigated for sexual harassment in the past." Id. at 852. The employer asserted before the Fourth Circuit that the true reason was the sexual harassment investigation. Id. However, the employer never verified the prospective employee was investigated

13

for sexual harassment and the evidence supported an inference that the employer never "honestly believed" the prospective employee was investigated for sexual harassment. Id. at 853.

Here, there is no evidence the City has ever changed its rationale. The City conducted an extensive administrative investigation into the allegations against the Plaintiff. The detailed findings of the administrative investigation were and always have been the stated reasons for the City terminating Plaintiff. Plaintiff's argument that the City has offered different rationales for terminating the Plaintiff is not reflected in the record.

Therefore, summary judgment should be granted to the City because the Plaintiff has not produced any evidence that the City discriminated against the Plaintiff in terminating his employment.

## III.    THE PLAINTIFF CANNOT ESTABLISH A RETALIATION CLAIM.

Plaintiff's final argument for why the District Court should not have granted summary judgment is that he produced sufficient evidence to establish a claim for retaliation. To establish a prima facie case of retaliation, Plaintiff must show "(1) he engaged in protected activity, (2) he suffered an adverse employment action at the hands of [his employer]; and (3) [the employer] took the adverse action because of the protected activity." Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 543 (4th Cir. 2003) (Spriggs v. Diamond Auto Glass, 242 F.3d 179,

190 (4th Cir. 2001)). Plaintiff's retaliation claim fails because he did not suffer an adverse employment action from the City. While it is true that City issued a counseling form to Plaintiff on May 2, 2012, for going outside the chain of command when speaking to Human Resources, the counseling form merely warned Plaintiff that going outside the chain of command could result in disciplinary action. JA at 16. Additionally, the City did not terminate Plaintiff for speaking with Human Resources, but rather his discipline was based in part on making false and misleading statements to Human Resources, such as claiming to be paying for medication out of pocket, which Human Resources determined was untrue. JA at 94. Therefore, even if his conversation with Human Resources constituted protected activity, the City did not impose an adverse employment action against Plaintiff because of any protected activity.

Therefore, the District Court correctly granted the City summary judgment on the Plaintiff's retaliation claim.

## IV.   THE CITY DID NOT DISCRIMINATE AGAINST THE PLAINTIFF BECAUSE HE IS CAUCASIAN.

Plaintiff appears to have abandoned his Title VII claim, as it is not addressed in his Corrected Opening Brief. See, e.g., Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999) (concluding that when an appellant fails to raise a claim in his opening brief, the claim is deemed abandoned). Plaintiff's lack of briefing is likely because Plaintiff cannot establish a prima facie case under Title

15

VII. To establish a prima facie case under Title VII, Plaintiff must show "(1) [he] is a member of a protected class, (2) [he] was charged with engaging in prohibited conduct, (3) [his] conduct was substantially similar to that of employees outside the protected class, and (4) [he] was punished more severely than employees outside the protected class." <u>Jenks v. City of Greensboro</u>, 495 F. Supp. 2d 524, 527-528 (M.D.N.C. 2007) (citing <u>Moore v. City of Charlotte</u>, 754 F.2d 1100, 1105-06 (4th Cir. 1985)).

As stated in section II, subsection b above, the Plaintiff has only pointed to James Powell as a person outside Plaintiff's protected class who was punished more severely than him. For the reasons stated in section II, subsection b above, the Plaintiff's conduct was not substantially similar to Mr. Powell's conduct. Therefore, the Plaintiff cannot make out a prima facie case for a violation of Title VII. The City should be granted summary judgment for the Title VII claim.

## <u>CONCLUSION</u>

The Court should affirm the District Court's grant of summary judgment to the City. The material facts are not in dispute. Plaintiff failed to produce evidence to support a reasonable inference of unlawful discrimination and different treatment from similarly situated firefighters outside of his protected class. Plaintiff cannot produce evidence that he was retaliated against for speaking with Human Resources because he did not suffer any adverse employment action. Finally,

Plaintiff has abandoned his Title VII claim alleging the City discriminated against him because of his race, as he did not address it in his Corrected Opening Brief. Accordingly, the Court should affirm the District Court's order granting summary judgment in favor of the City of Chesapeake.

**Respectfully submitted**,

CITY OF CHESAPEAKE


By:  /s/ Ryan C. Samuel
        Of Counsel


Ryan C. Samuel, Esquire (VSB#84400)
Dana E. Sanford, Esquire (VSB#32776)
OFFICE OF THE CITY ATTORNEY
City of Chesapeake
306 Cedar Road
Chesapeake, VA  23322
Phone:   (757) 382-6586
Fax:       (757) 382-8749
rsamuel@cityofchesapeake.net
desanford@cityofchesapeake.net
Counsel for Defendant City of Chesapeake

## <u>CERTIFICATE OF COMPLIANCE</u>

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

  [ X ] this brief contains [*3,788*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

  [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

  [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

  [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: December 21, 2015            /s/ Ryan C. Samuel
                                                        *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 21st day of December, 2015, I caused this Brief of Appellee to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Shannon B. Bayona
TAYLOR BAYONA LAW GROUP, PC
1401 Kempsville Road, Suite A
Chesapeake, Virginia  23320
(757) 312-0050

Margaret M. Looby
ATTORNEY AT LAW
638 Independence Parkway, Suite 240
Chesapeake, Virginia  23320
(484) 241-6020

*Counsel for Appellant*

I further certify that on this 21st day of December, 2015, I caused the required copies of the Brief of Appellee to be hand filed with the Clerk of the Court.

/s/ Ryan C. Samuel
*Counsel for Appellant*